UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

DEONDRE CORDELL HIGGINS,           )
                                   )
              Plaintiff,           )
                                   )
        v.                         )        No. 2:23-cv-00355-JMS-MG
                                   )
MCGUIRE Nurse,                     )
ASHLEY MATCHETT Physical Therapist,)
JOSEPH Doctor,                     )
WARDEN OF USP-TERRE HAUTE,         )
UNITED STATES OF AMERICA,          )
                                   )
              Defendants.          )

**ORDER**

Plaintiff Deondre Higgins, a federal inmate, filed this action alleging Federal Tort Claims

Act ("FTCA") negligence claims against the United States, Rehabilitation Act claims against the

Warden of USP-Terre Haute, and *Bivens* claims alleging constitutionally inadequate medical care

against Nurse Cody McGuire,[1] Physical Therapist ("PT") Ashley Matchett, and Dr. Lolit Joseph.[2]

Before the Court are: (1) a motion to dismiss claims against Nurse McGuire, dkt. 30, (2) a motion

for summary judgment regarding claims against PT Matchett, dkt. 34, (3) a motion for summary

judgment regarding claims against Dr. Joseph, dkt. 40, and (4) a motion to stay the Court's decision

on the pending motions for summary judgment, filed by Mr. Higgins, dkt. 50.

The Court addresses each motion separately, below.

---

[1] The **clerk is directed** to correct the name of Defendant McGuire to "Nurse Cody McGuire" on the docket.
[2] The **clerk is directed** to correct the name of Defendant Joseph to "Doctor Lolit Joseph" on the docket.

### A.  Factual Background

Mr. Higgins is paralyzed from the waist down. Dkt. 10 at 2. He alleges that on August 27, 2021, while being transported back to USP-Terre Haute prison, he was injured when he flipped backwards in his wheelchair while handcuffed. *Id.* Specifically, two non-party officers failed to lock the brakes on his wheelchair, failed to secure it, and then accelerated without warning, causing the wheelchair in the moving van to flip over. *Id.* Then, despite being outside the hospital, the officers failed to return him inside so he could receive medical care for his injuries. *Id.* When he arrived back to the prison, he informed the individual defendants about what happened, but none of them reported the incident. *Id.* at 3.

### B.  Nurse McGuire's Motion to Dismiss

#### 1.  Rule 12(b)(6) Standard

To survive a motion to dismiss, a complaint need only "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)). In reviewing the sufficiency of a complaint, the Court must accept all well-pled facts as true and draw all permissible inferences in the plaintiff's favor. *See Tucker v. City of Chicago*, 907 F.3d 487, 491 (7th Cir. 2018).

#### 2.  *Bivens, Abbasi, and Egbert*

Congress has provided that "district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. But jurisdiction does not necessarily create the authority to award damages. *Schweiker v. Chilicky*, 487 U.S. 412, 414 (1988). Although Congress has authorized district courts to award damages

against state officials who violate the Constitution while acting under color of state law, *see* 42 U.S.C. § 1983, Congress has not provided an analogous authority to award damages against federal officials who violate the Constitution while acting under color of federal law. *See Ziglar v. Abbasi*, 582 U.S. 120, 130 (2017).

Despite a lack of explicit congressional approval, the Supreme Court held in *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 397 (1971), that district courts have the implied authority to award damages against federal officials for unreasonable searches and seizures in violation of the Fourth Amendment. In *Davis v. Passman*, 442 U.S. 229, 249 (1979), the Court extended this implied authority to actions alleging gender discrimination in federal employment in violation of the Fifth Amendment. And in *Carlson v. Green*, 446 U.S. 14, 24 (1980), the Court again extended this implied authority to actions alleging deliberate indifference to a prisoner's serious medical needs in violation of the Eighth Amendment. In that case, the lawsuit was brought by the estate of an incarcerated individual who died after receiving delayed treatment for an asthma attack. *Id.* at 16, n.1.

In *Abbasi*, the Supreme Court noted that those "three cases—*Bivens*, *Davis*, and *Carlson*—represent the only instances in which the Court has approved of an implied damages remedy under the Constitution itself." 582 U.S. at 131. And in the forty years since *Carlson*, the Court has declined to create any new contexts for *Bivens* claims. *Id.* at 135 (listing cases); *see also Hernandez v. Mesa,* 589 U.S. 93 (2020) (no implied damages remedy in action against border patrol agent for cross-border shooting). In each of these cases, the Court reasoned there were "special factors counselling hesitation" about creating a new *Bivens* context in the absence of affirmative action by Congress. *Abbasi*, 582 U.S. at 136.

In *Abbasi*, the Court noted that its method for determining whether a statute creates a private cause of action has shifted dramatically since the mid-20th century. 582 U.S. at 131-32. When *Bivens* was decided, the Court assumed it could create private causes of action to give meaningful effect to a statute, and the conclusion that constitutional provisions similarly imply private causes of action seemed inevitable. *Id.* at 132. Today, the Court takes a more cautious approach, assuming that the "far better course" is to restrict private causes of action to statutes where Congress has explicitly conferred such a right. *Id.* at 132-33. This evolution in judicial philosophy suggests "that the analysis in the Court's three *Bivens* cases might have been different if they were decided today." *Id.* at 134.

Nevertheless, *Abbasi* declined to overrule *Bivens*, reasoning that *Bivens*' vindication of constitutional rights in certain contexts, "and the undoubted reliance upon it as a fixed principle in the law, are powerful reasons to retain it." *Id*. Instead, the Court limited *Bivens* to the contexts that arose in *Bivens*, *Davis*, and *Carlson*—unlawful search and seizure, gender discrimination in employment, and deliberate indifference to a prisoner's serious medical needs in a BOP facility. *Id.* Expanding *Bivens* to a new context is now a "disfavored judicial activity." *Id.* at 135.

Trial courts assessing Bivens claims must conduct a two-step inquiry. *Egbert v. Boule*, 596 U.S. 482, 492 (2022). To determine whether a *Bivens* remedy is available to Mr. Higgins for his constitutional claims against Nurse McGuire, the Court first asks whether his claim presents "a new *Bivens* context" from previous *Bivens* cases decided by the Supreme Court. *Id*.; *Abbasi*, 582 U.S. at 138, 147. If the case presents a new *Bivens* context, the Court then inquires whether there are "special factors counseling hesitation before authorizing a new kind of federal litigation." *Hernandez,* 589 U.S. at 102.

### 3.  New *Bivens* Context Analysis

The Court first must decide whether Mr. Higgins' claims arise in a new *Bivens* context. "A claim may arise in a new context even if it is based on the same constitutional provision as a claim in a case in which a damages remedy was previously recognized." *Id.* at 103. The question is whether "the case is different in a meaningful way from previous *Bivens* cases decided by [the Supreme Court]." *Abbasi*, 582 U.S. at 147. As the Supreme Court explained, "[D]ifferences that are meaningful enough to make a given context a new one" may include, but are not limited to,

> the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider.

*Id.* at 139-40.

Although Mr. Higgins brings Eighth Amendment claims against Nurse McGuire, like the plaintiff's estate in *Carlson*, the context is vastly different. In *Carlson,* the defendants' gross negligence created an emergency situation by administering contra-indicated drugs, attempting to use machinery known to be inoperative, and delaying competent medical attention for eight hours, ultimately resulting in death. 446 U.S. at 16, n.1. Mr. Higgins' claim against Nurse McGuire alleges that, after a transportation accident that caused him neck pain, Mr. Higgins informed Nurse McGuire of what occurred but he failed to report the incident to anyone. Dkt. 1 at 6. The Court finds that Mr. Higgins' Eighth Amendment claims present a new *Bivens* context, and therefore proceeds to the special factor analysis.

### 4.  Special Factor Analysis

The special factor analysis is brief, as it will usually be in light of *Egbert*. Once the Court finds any reason to defer to Congress – or any alternative remedy, even if the plaintiff alleges it is inadequate – the analysis is complete. Here, alternative remedies are not only available to Mr. Higgins, but he is availing himself of one in this action. The Federal Tort Claims Act, 28 U.S.C. § 1346, allows recovery of damages against the United States under certain circumstances when federal agents, including prison officials, commit a state-law tort *See Abbasi*, 582 at 134; *see also Oliveras v. Basile*, 440 F. Supp 3d 365, 373 (S.D. N.Y. Feb. 25, 2020) (observing that in light of *Abbasi*, courts have questioned whether *Carlson*'s analysis of this issue remains good law); *Badley v. Granger*, No. 2:17-CV-00041-JMS-DLP, 2018 WL 3022653, at *3 (S.D. Ind. June 18, 2018) (declining to find an implied *Bivens* remedy partly because the inmate could have pursued a FTCA claim).

Accordingly, Nurse McGuire's motion, dkt. [30], is **granted**, and Mr. Higgins' *Bivens* claim against Nurse McGuire is **dismissed**.

### C.  Summary Judgment

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). When reviewing a motion for summary judgment, the Court views the record and draws all reasonable inferences from it in the light most favorable to the nonmoving party. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572–73 (7th Cir. 2021). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). A court

only has to consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it need not "scour the record" for evidence that might be relevant. *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 573−74 (7th Cir. 2017) (cleaned up).

A party seeking summary judgment must inform the district court of the basis for its motion and identify the record evidence it contends demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

### 1. PT Matchett & Dr. Joseph's Motions

Like his claim against Nurse McGuire, Mr. Higgins is proceeding against both PT Matchett and Dr. Joseph on *Bivens* claims related to alleged inadequate medical care. However, unlike Nurse McGuire, neither PT Matchett nor Dr Joseph are federal employees. Dkt. 35 at 3 ("Plaintiff has plead that Defendant Matchett provides services at the penitentiary. This is accurate; however, it is undisputed that Defendant Matchett is not a federal employee."); 41 at 3 ("Plaintiff has plead that Dr. Joseph provides services at USP. This is accurate; however, it is undisputed that Dr. Joseph is not a federal employee.").

As explained above, plaintiffs have a high hurdle to prove a *Bivens* claim. However, even if Mr. Higgins could prove that his claims either do not arise in a new context or do not have special factors counseling hesitation, he still could not succeed in his claims against PT Matchett and Dr.

Joseph because *Bivens* claims have never extended to non-governmental employees. *Minneci v. Pollard,* 565 U.S. 118, 126 (2012) (holding that "employment status – makes a critical difference" and declining to extend *Bivens* claims against non-governmental prison employees). PT Matchett and Dr. Joseph both move for summary judgment, and are entitled to it, on the basis that they are both private healthcare professionals with private practices who contract to provide services to the prison.

Accordingly, PT Matchett and Dr. Joseph's motions for summary judgment, dkts. [34] and [40], respectively, are **granted**.

### D. Mr. Higgins' Motion to Stay

Mr. Higgins moves for a stay regarding PT Matchett and Dr. Joseph's summary judgment motions. Dkt. 50. He argues that the motions are premature because discovery has not begun in this matter. *Id.* While Mr. Higgins is correct that generally parties do not move for summary judgment prior to commencement of discovery, it is not true that every summary judgment motion filed at such a time is premature. Federal Rule of Civil Procedure 56(c) provides the procedures required for summary judgment motions. Rule 56(c)(1) dictates that "[a] party asserting that a fact cannot be…. disputed must support the assertion by: (A) citing to particular parts of materials in the record, including… affidavits[.]" Both PT Matchett and Dr. Joseph attached affidavits to their motions swearing that they are not, nor ever have been, federal employees. Dkts. 35-1, 42. Because this fact is dispositive and Mr. Higgins does not genuinely dispute it, nor does he specifically seek discovery on this issue, their motions are not premature. Accordingly, the Court declines to stay its decision and Mr. Higgins' motion, dkt. [50], is **denied.**

**E.  Summary**

In sum, Nurse McGuire's motion to dismiss, dkt. [30], is **granted**. PT Matchett and Dr. Joseph's motions for summary judgment, dkts. [34], [40], are **granted**. Mr. Higgins' motion for a stay, dkt. [50], is **denied**.

The **clerk is directed** to correct the name of Defendant McGuire to "Nurse Cody McGuire" on the docket. The **clerk is directed** to correct the name of Defendant Joseph to "Doctor Lolit Joseph" on the docket. The **clerk is directed** to remove Nurse McGuire, PT Matchett, and Dr. Joseph as defendants on the docket.

This action will proceed on FTCA claims against the United States and Rehabilitative Act claims against the Warden of USP-Terre Haute. The Court will set scheduling orders for these claims via separate orders.

**IT IS SO ORDERED.**

Date: 3/11/2025

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

Distribution:

DEONDRE CORDELL HIGGINS
21239-045
BUTNER - MEDIUM II FCI
BUTNER MEDIUM II FEDERAL CORRECTIONAL INSTITUTION
Inmate Mail/Parcels
P.O. BOX 1500
BUTNER, NC 27509

Louise K. Conces
Bose McKinney & Evans LLP
lconces@boselaw.com

William W. Drummy
WILKINSON GOELLER MODESITT WILKINSON & DRUMMY
wwdrummy@wilkinsonlaw.com

Joi Kamper
DOJ-USAO
joi.kamper@usdoj.gov

Philip R. Zimmerly
BOSE MCKINNEY & EVANS, LLP (Indianapolis)
pzimmerly@boselaw.com